SAMUEL, Judge.
This suit on a building contract, involving an allegedly defective terrazzo floor, was tried twice before a jury. Each trial resulted in a verdict in favor of plaintiff but the first verdict was not made the judgment of the court solely on the grounds that the amount of damages awarded and the dismissal of the reconventional demand did not correspond to the proof. The case is now before us on an appeal taken by the defendant from a verdict and judgment, rendered against him in the second trial, for $2,750.00, subject to a credit of $300.00’ as prayed for in reconventional demand.
Appellant contends that plaintiff has not carried his burden of proof by competent, admissible and credible testimony; that he has not properly and timely mitigated his damages; and that there was a substantial' compliance with the building contract by the defendant so that plaintiff is not entitled to the amount of damages awarded, which damages contemplate the tearing up and re-laying of the entire floor involved.
Plaintiff and defendant, the latter a terrazzo contractor, entered into a written contract for the construction by defendant of a terrazzo floor covering the entire interior area, the porch and the patio of plaintiff’s proposed residence. There was no general contractor involved, plaintiff himself entering into the necessary subcontracts with defendant and others. In due course the interior terrazzo floor was completed and plaintiff moved into the house. The sum of $1,024.00 was paid on the contract price and the balance thereof, $300.00, remained unpaid due to the fact that the porch and patio were not completed. At the time plaintiff moved into the residence the floor appeared to be in good condition and plaintiff was satisfied therewith but, after several weeks of use,, it began to deteriorate.
The only issues presented to us are two questions of fact, i. e., whether or not the floor was substandard to an extent entitling plaintiff to a judgment and, if sor *247 •taking into consideration defendant’s complaint relative to mitigation1 of damages, whether or not the amount of damages awarded is supported by sufficient proof to justify the same.
Five witnesses testified on behalf of plaintiff and three testified for the defendant. Independently of its witnesses defendant also introduced into evidence a report by the Louisiana Terrazzo Contractors Association. Before reaching a verdict, and at the request of the defendant, the jury was taken to plaintiff’s residence and viewed the floor.
The testimony of plaintiff and his wife is, except for some minor and unimportant differences, generally to the same effect. The floor required re-working before they moved into the residence due to the fact that, prior to its completion, the interior work contained larger and more numerous holes than are to be expected in a properly constructed terrazzo floor. Mrs. Martin overheard one of the defendant’s employees inform defendant of the unsatisfactory condition of the floor after which Dinon ordered the floor regrouted and the voids filled in. After a few weeks of use the interior floor started to crumble, exuded a fine, white dust and developed numerous large holes, some sufficiently large to permit the entry of a finger. Complaints were made to the defendant who personally came out and made an inspection. They were informed by the defendant that he would not recommend putting machines on the floor again because it might only make the floor worse. However, he also told them that he would re-do the floors if they wanted him to or allow them a credit of $125.00 on the bill. They did not accept either offer and the floor continued to deteriorate and to exude a large amount of white dust, the color where holes had been filled in no longer matched the balance of the floor, and the floor had no gloss.
Clement R. Haulman, an employee of Pittsburg Testing Laboratory, testified as an expert for plaintiff. He had examined the floor on two occasions, one year and nine months apart, the last such examination having taken place a few days before he testified. In connection with his testimony there was introduced a report of his findings and conclusions made on the first examination. His report notes loss of terrazzo aggregate from the finished surface of the floor in both traveled and non-traveled areas, together with the unsatisfactory condition of small areas where repairs have been attempted. The report anticipates no future improvement of the floor. The conclusion of the report is that the terrazzo does not favorably compare with the usual high quality of such finishes, can be expected to further deteriorate, and blames the basic cause of substandard performance on the cement, which was either substandard, not used in sufficient quantity, or diluted with an excess of water during the mixing of materials. His testimony was to the effect that the floor is substandard and incapable of successfully receiving further repairs or patch work. He further testified that during the interval of time between his two examinations the condition of the floor had worsened from the standpoint of loosened aggregate particles and that there had been no improvement whatsoever.
Donald R. Pfefferle, an architect, also testified as an expert for plaintiff. He said that he was not critical of the “pin-holes” ordinarily found in terrazzo floors but that this particular floor had much larger holes, in some cases as much as 1 inch wide and 1 inch deep, and lacked the customary hardness of terrazzo. The terrazzo was not acceptable to him as an architect and he was of the opinion that regrouting would not improve the floor.
The last witness for plaintiff was Pros-pero J. D’Angelo, a carpenter who also did some general contracting work, had assisted plaintiff with the sub-contracts and had supervised the entire construction of the residence, doing all the carpenter and cement work thereon. He testified to the total cost of removing and replacing the *248 entire defective flooring, including removal and replacing of paneling, cabinets and other carpentry work, and plumbing.
Napoleon Mareldo was the first witness called by defendant. He had done terrazzo work for more than 30 years and, as an employee of the defendant, had participated in the work here involved. His ability to speak or understand the English language was so limited, as was his recollection of the events involved, that his testimony is of no assistance whatsoever, an observation properly made by the trial court.
The next witness was the defendant himself. He testified that all terrazzo had air pockets or “pin-holes” and exuded some dust for a period of six or seven months. He felt that the trouble could have been caused by the use of strong detergents (such use was denied by Mrs. Martin). He had checked the job both while the work was being done and after receipt of the complaints and was of the opinion that the terrazzo had been laid in a workmanlike manner and was up to standard. However, after the complaints he did offer to work the floor again if plaintiff and his wife desired that the same be done. He did not recommend such additional work because he was of the opinion that regrinding would only cut down the thickness of the terrazzo and it would “still come out the same way.” He admitted that one of his employees had called him from the job and told him that the floor had more holes than it should have had, at which time he told the employee to go over the job, regrouting and refilling, which was done. He further testified that regrouting after the complaints would cost only $125.-00, plus the labor and the cost of moving the occupants and contents out of the house for one and one-half weeks.
Defendant’s last witness was Herbert J. Cooke, an employee of Shilstone Testing Laboratory, who was qualified as an expert with reference to concrete. In connection with his testimony a report of his laboratory was received in evidence and read to the jury. The report is based upon what, is known as a “Swiss Hammer” test. He testified that the readings resulting from the test, and as shown on the report, indicated that the cementatious material used was not bad, thus contradicting the report and testimony of plaintiff’s expert, Haul-man. He further testified that it was not possible to arrive at a proper conclusion regarding the cement by a visual and hand probe test such as was used by plaintiff’s expert. This witness did not himself make the test or the report, nor had he actually seen the floor.
The other report introduced by defendant was one made by three members of the Louisiana Terrazzo Contractors Association, of which group the defendant was a member and its current secretary. The report is to the effect that the finished floor had more than the usual amount of holes but that the same could be corrected by regrouting.
We conclude that the floor was substandard and that plaintiff was entitled to a judgment. On the question of mitigation of damages, considering the entire record and particularly the testimony of plaintiff’s experts and of the defendant himself, the latter to the effect that re-grouting was not advisable, would only cut down the thickness of the terrazzo and would not correct the condition complained of, we further conclude that no mitigation of damages was possible and that plaintiff is entitled to a judgment in the amount of the cost of replacing the floor.
While the proof offered by plaintiff on the question of this cost is not as complete as we would like it to be, we consider the same to be sufficient, especially in view of the fact that no proof to the contrary was offered by defendant. The proof offered by plaintiff was that of their witness Prospero J. D’Angelo who, although not licensed as such, was experienced and had actually engaged in the work of a general contractor. His computation *249 ■of the total cost of removing- and replacing the defective flooring is sufficient evidence upon which the jury could return a verdict.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.